1  Abbas Kazerounian, Esq. (SBN: 249203)
   ak@kazlg.com
2  **KAZEROUNI LAW GROUP, APC**
3  245 Fischer Ave., Suite D1
   Costa Mesa, CA 92626
4  Telephone:   (800) 400-6808
   Facsimile:    (800) 520-5523
5

6  Ryan L. McBride, Esq. (SBN: 297557)
   ryan@kazlg.com
7  **KAZEROUNI LAW GROUP, APC**
8  2633 E. Indian School Road, Suite 460
   Phoenix, AZ 85016
9  Telephone:   (800) 400-6808
   Facsimile:    (800) 520-5523
10

11 *Attorneys for Plaintiff*s

12            **UNITED STATES DISTRICT COURT**
13            **SOUTHERN DISTRICT OF CALIFORNIA**

14 Andy and Courtney Spears, individuals,    CASE NO.   **'20 CV 2232 BEN BGS**

15
                                            **COMPLAINT FOR DAMAGES FOR**
16            Plaintiff,                     **VIOLATIONS OF:**

17 v.
                                            **1.   THE FAIR DEBT COLLECTION**
18                                           **PRACTICES ACT, 15 U.S.C. § 1692**
   Midland Credit Management, Inc.,          ***ET SEQ.* ("FDCPA");**
19
            Defendant.                       **2.   THE ROSENTHAL FAIR DEBT**
20                                           **COLLECTION PRACTICES ACT,**
21                                           **CAL. CIV. CODE § 1788, *ET SEQ.***
                                            **("RFDCPA");**
22                                           **3.   NEGLIGENT AND WILLFUL**
23                                           **VIOLATIONS OF THE TELEPHONE**
                                            **CONSUMER PROTECTION ACT, 47**
24                                           **U.S.C. § 227(B) ("TCPA")**
25
26                                           **JURY TRIAL DEMANDED**
27

28

1

## INTRODUCTION

2   1.    The United States Congress has found abundant evidence of the use of
3   abusive, deceptive, and unfair debt collection practices by many debt collectors, and
4   has determined that abusive debt collection practices contribute to the number of
5   personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of
6   individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15
7   U.S.C. § 1692 et seq, to eliminate abusive debt collection practices by debt
8   collectors, to insure that those debt collectors who refrain from using abusive debt
9   collection practices are not competitively disadvantaged, and to promote consistent
10  State action to protect consumers against debt collection abuses.

11  2.    The California legislature has determined that the banking and credit
12  system and grantors of credit to consumers are dependent upon the collection of just
13  and owing debts and that unfair or deceptive collection practices undermine the
14  public confidence that is essential to the continued functioning of the banking and
15  credit system and sound extensions of credit to consumers. The Legislature has
16  further determined that there is a need to ensure that debt collectors exercise this
17  responsibility with fairness, honesty, and due regard for the debtor's rights and that
18  debt collectors must be prohibited from engaging in unfair or deceptive acts or
19  practices.1

20  3.    The TCPA prohibits: (1) any person from calling a cellular telephone
21  number; (2) using an automatic telephone dialing system ("ATDS"); and (3) without
22  the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

23  4.    The TCPA defines an "automatic telephone dialing system" ("ATDS")
24  as "equipment that has the capacity - (A) to store or produce telephone numbers to
25  be called, using a random or sequential number generator; and (B) to dial such
26  numbers." 47 U.S.C. § 227(a)(1).

27

28  _____
[1] Cal. Civ. Code §§ 1788.1 (a)-(b)

COMPLAINT FOR DAMAGES                    *Spears, et al. v. Midland Credit Management, Inc.*

5.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

6.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

7.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express ***written*** consent" for such calls to wireless numbers.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

8.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

9.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §

COMPLAINT FOR DAMAGES                                    *Spears, et al. v. Midland Credit Management, Inc.*

64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

10.    "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

11.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan,* 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

12.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).  This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future.  Id*.

13.    In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

14.    If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.  *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

COMPLAINT FOR DAMAGES                                    *Spears, et al. v. Midland Credit Management, Inc.*

15.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc*., 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the *text message*). (emphasis added).

16.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

17.     ANDY AND COURTNEY SPEARS ("Plaintiffs"), by Plaintiffs' attorneys, brings this action to challenge the actions of MIDLAND CREDIT MANAGEMENT, INC. ("Defendant"), with regard to unlawfully contacting Mrs. Spears' employer and continuing to call Plaintiffs without Plaintiffs' consent using an ATDS in violation of the TCPA.

18.     Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiffs allege on personal knowledge.

19.     While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

20.     Unless otherwise stated, all the conduct engaged in by Defendant took place in California and Tennessee.

21.    Any violations by Defendant was knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

22.    Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

## JURISDICTION AND VENUE

23.    Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681p; 15 U.S.C. § 1692 *et seq.;* 47 U.S.C. § 227(b); and 28 U.S.C. § 1367 for supplemental state claims.

24.    This action arises out of Defendant's violations of (i) Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"); (ii) California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.17 ("RFDCPA"); and (iii) Telephone Consumer Protection Act, 47 U.S.C. § 227(b).

25.    Because Defendant conducts business is located in San Diego, California and registered with the California Secretary of State, personal jurisdiction is established.

26.    Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Defendant resides in the City of San Diego, State of California which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendant conducted business within this judicial district at all times relevant.

## PARTIES

27.    Plaintiff Andy Spears is an adult resident of Sumner County, Tennessee and resides at 106 Sagamore Trace, Hendersonville, Tennessee 37075. He is the husband of Plaintiff Courtney Spears. He is a "consumer" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a (3).

28.     Plaintiff Courtney Spears is an adult resident of Sumner County, Tennessee and resides at 106 Sagamore Trace, Hendersonville, Tennessee 37075. She is the wife of Plaintiff Andy Spears. She is a "consumer" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a (3).

29.     Defendant is a Kansas for-profit corporation duly licensed in the State of California, with principal offices at 350 Camino de la Muir, Suit 300, San Diego, California 92108- 3007.

30.     Defendant Midland Credit Management, Inc. is a "debt collector" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a (6).

31.     Defendant is a "person" as defined by 47 U.S.C. § 153 (39).

## FACTUAL ALLEGATIONS

32.     At the beginning of November, 2019 Defendant, a "debt collector" with the meaning of 15 U.S.C. § 1692a(6) of the Fair Debt Collection Practices Act ("FDCPA") began making telephone calls to the Plaintiffs on behalf of Citibank regarding a credit card account held by the Plaintiffs.

33.     The vast majority of these calls were made to Plaintiffs' cellular phones through the use of an ATDS as defined by 47 U.S.C. § 227(a)(1) in order to attempt to collect a debt.

34.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

35.     Defendant's calls were placed to telephone number assigned to a cellular telephone service for which Plaintiffs incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

36.     Plaintiffs are informed and believe Defendant was using an ATDS because on most or all of the calls to Plaintiffs from Defendant, there was a click and a pause before a live representative of Defendant would talk.

COMPLAINT FOR DAMAGES                    *Spears, et al. v. Midland Credit Management, Inc.*

37.     On November 15, 2019 a representative of Midland named "Brenda" called the school where Courtney Spears is a teacher and left a message with the front desk.

38.     Upon learning of the November 15 call, Plaintiffs accessed the Midland official computer website and completed a contact form specifically asking the company not to contact his wife at work.

39.     Nonetheless, Defendant's representative contacted the school where Courtney Spears works again on November 18, 2019 and again on November 20, 2019.

40.     A school employee asked Defendant's representative not to attempt to contact Mrs. Spears again at the school during the November 20, 2019 call.

41.     The calls to Mrs. Spears' employer stopped after November 20, 2019.

42.     However, Defendant's representatives continued to contact Plaintiffs on their cellular phones consistently after approximately November 1, 2019.

43.     These calls were very persistent, occurring three to five times per day.

44.     The calls were made from multiple telephone numbers (characteristic of an Automatic Telephone Dialing System, making it hard to identify the source of the calls).

45.     On January 2, 2020 Plaintiffs sent a letter to Midland requesting that it communicate with them regarding the debt to Citibank only in writing.

46.     This letter effectively revoked any consent to contact that might have been previously given to contact Plaintiffs' cellular phones.

47.     Despite Plaintiffs' January 2, 2020 letter, the frequent calls continued.

48.     Plaintiffs next sent a letter to Midland dated January 11, 2020 by certified mail through the United States Postal Service demanding that they be contacted about the debt only by mail.

49.     When the calls continued at the pace of three to five per day at least six days per week, Plaintiffs sent a third letter dated January 25, 2020 by certified mail

through the United States Postal Service demanding that the calls cease and that Plaintiffs be contacted about the debt only by mail.

50.     Despite three letters, two sent by certified mail, the calls to Plaintiffs' cellular phones continued unabated until they ceased in early March of 2020.

51.     For the four-month period from early November 2019 through early March 2020, Defendant's representatives made approximately 400 phone calls to the Plaintiffs on their cellular phones.

52.     Approximately half of those calls were made after Defendant had been instructed in writing to cease calling and contact them only in writing.

53.     In addition, Defendant's representatives contacted Courtney Spears three times at her place of employment, a school at which she teaches.

54.     Two of those calls to Courtney Spears' employer came after Plaintiffs had specifically instructed Defendant not to call Courtney Spears' place of employment.

55.     The calls to Courtney Spears' place of employment only ceased when a school official instructed Defendant's representative to stop calling the school.

56.     The frequency and persistence of the calls to Plaintiffs' cellular phones was nothing short of harassment causing disruption of their lives and extreme mental distress and anxiety.

57.     Beyond that, the calls to Courtney Spears' place of employment caused her extreme humiliation and embarrassment with her co-workers and school administrators.

58.     Through contacting Courtney Spears' employer, Defendant violated 15 U.S.C. § 1692c(a)(3) by contacting consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Defendant violated Cal. Civ. Code § 1788.17.

COMPLAINT FOR DAMAGES                                    *Spears, et al. v. Midland Credit Management, Inc.*

59.     Through contacting Courtney Spears' employer, Defendant violated 15 U.S.C. § 1692c(b) by contacting a third party without the prior consent of the consumer given directly to the debt collector. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Defendant violated Cal. Civ. Code § 1788.17.

60.     Through contacting Plaintiffs after Plaintiffs sent the three letters of revocation to Defendant in January 2020, Defendant violated 15 U.S.C. § 1692c(C) by communicating further with Plaintiffs with respect to the alleged debt in an attempt to collect the debt. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Defendant violated Cal. Civ. Code § 1788.17.

61.     Through contacting Courtney Spears' employer and by contacting Plaintiffs after Plaintiffs sent the three letters of revocation to Defendant in January 2020, Defendant violated 15 U.S.C. § 1692d by engaging in any conduct in which the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. In addition, Defendant caused Plaintiffs' telephones to ring and/or engaged Plaintiffs in a telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Defendant violated Cal. Civ. Code § 1788.17.

62.     Through contacting Courtney Spears' employer and by contacting Plaintiffs after Plaintiffs sent the three letters of revocation to Defendant in January 2020, Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect Plaintiffs' alleged debt. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Defendant violated Cal. Civ. Code § 1788.17

63.     Through contacting Plaintiffs after Plaintiffs sent the three letters of revocation to Defendant in January 2020, Defendant violated 47 U.S.C. § 227(b) by

COMPLAINT FOR DAMAGES                    *Spears, et al. v. Midland Credit Management, Inc.*

1  contacting Plaintiffs without Plaintiff's prior express consent or an emergency using

2  an ATDS.

3  **CAUSES OF ACTION CLAIMED BY PLAINTIFF**

4  **COUNT I**

5  **VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**

6  **15 U.S.C. § 1692 ET SEQ. (FDCPA)**

7  64.    Plaintiffs incorporate by reference all of the above paragraphs of this

8  Complaint as though fully stated herein.

9  65.    The foregoing acts and omissions constitute numerous and multiple

10  violations of the FDCPA, including but not limited to each and every one of the

11  above-cited provisions of the FDCPA, 15 U.S.C. §1692.

12  66.    Defendant knew or should have known not to contact Courtney Spears'

13  employer especially after Plaintiffs specifically revoked consent to call Courtney

14  Spears' employer.

15  67.    Defendant knew or should have known not to call Plaintiffs after

16  Plaintiffs expressly told Defendant not to call in three letters.

17  68.    As a result of each and every violation of the FDCPA, Plaintiffs are

18  entitled to any actual damages pursuant to 15 U.S.C. §1692k(a)(1); statutory

19  damages in the amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

20  and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from

21  Defendant.

22  **COUNT II**

23  **VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT**

24  **CAL. CIV. CODE §§ 1788-1788.32 (RFDCPA)**

25  69.    Plaintiffs incorporate by reference all of the above paragraphs of this

26  Complaint as though fully stated herein.

27  70.    The foregoing acts and omissions constitute numerous and multiple

28  violations of the RFDCPA.

COMPLAINT FOR DAMAGES                               *Spears, et al. v. Midland Credit Management, Inc.*

71.    As a result of each and every violation of the RFDCPA, Plaintiffs are entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from each Defendant.

**COUNT III**

**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT**

**47 U.S.C. § 227(B)**

72.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

73.    The foregoing acts and omissions constitute numerous and multiple violations of 47 U.S.C. § 227 et seq.

74.    As a result of Defendant's negligent violations of 47 U.S.C. §227(b)(1), Plaintiffs are entitled to and request $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B).

75.    As a result of Defendant's willful and/or knowing violations of 47 U.S.C. §227(b)(1), Plaintiffs are entitled to and request treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant for:

- An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);
- An award of statutory damages up to $1,000.00, pursuant to 15 U.S.C. § 1692k;
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1788.30(a);
- An award of statutory damages of $1,000.00, pursuant to Cal. Civ. Code § 1788.30(b), against each named Defendant individually;

COMPLAINT FOR DAMAGES                    *Spears, et al. v. Midland Credit Management, Inc.*

- For reasonable attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1692k(a)(3) and Cal. Civ. Code § 1788.30(c);

- An award of $500 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C.  227(b)(3)(B);

- An award of $1,500, for each and every willful violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C);

- Any and all other relief the Court deems just and proper.

## TRIAL BY JURY

76.     Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demands, a trial by jury.


KAZEROUNI LAW GROUP, APC

Date: November 16, 2020          By: *s/ Ryan L. McBride*
                                     Ryan L. McBride, Esq.
                                     *Attorneys for Plaintiff*